**CARROLL TOUCH, INC.,**
**Plaintiff–Appellant,**

v.

**ELECTRO MECHANICAL SYSTEMS,**
**INC., Defendant/Cross–Appellant.**

**Nos. 93–1018, 93–1034.**

United States Court of Appeals,
Federal Circuit.

Aug. 24, 1993

---

**30.** The parties did not designate the motion to reconsider as part of the record on appeal.

James B. Blanchard, William Brinks Olds Hofer Gilson & Lione, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were Richard A. Kaplan, Harold V. Johnson and Leif R. Sigmond, Jr.

Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, Wisconsin, argued for defendant/cross-appellant. With him on the brief were Jeffrey O. Davis and Keith M. Baxter.

Before NIES, Chief Judge, RICH and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Carroll Touch, Inc. appeals from the judgment of the United States District Court for the Central District of Illinois holding that Electro Mechanical Systems, Inc. (EMS) did not infringe claim 24 of U.S. Patent 4,267,443 and that the '443 patent is invalid. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 24 USPQ2d 1349, 1992 WL 361702 (C.D.Ill. 1992) (memorandum opinion). EMS cross appeals from the order of the district court granting summary judgment in favor of Carroll Touch on EMS' counterclaims alleging violations of federal antitrust and state unfair competition laws. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* No. 87-2272 (C.D.Ill. May 1, 1992). We affirm-in-part and vacate-in-part.

## BACKGROUND

Carroll Touch is the assignee of U.S. Patent 4,267,443 to Arthur B. Carroll, Vladeta D. Lazarevich, and Mark R. Gardner, entitled "Photoelectric Input Apparatus." The claims of the '443 patent are directed to a photoelectric "touch input panel" for use over a computer's display device (*e.g.,* a cathode-ray tube) which enables a user to communicate with the computer by touching a location on the display screen that corresponds to a desired operation. The claimed invention uses a scanning infrared system that consists of a frame containing circuitry that generates a grid of infrared light beams. The grid is defined by two separate arrays of beams: an "X-beam array" composed of a set of parallel beams oriented along the horizontal or X-axis of the frame and a "Y-beam array" composed of a set of parallel beams oriented along the frame's vertical or Y-axis.

Communication with a computer equipped with the claimed invention is achieved by touching a function or command displayed on the screen with an object such as the user's finger. The location of that touch is identified in terms of the grid coordinates defined by the horizontal and vertical beams that are interrupted by the object. Information pertaining to the location of the object is then

inputted to the computer, which subsequently executes an action responsive to the selected function or command.

In 1975, Arthur Carroll founded Carroll Manufacturing Company, later known as Carroll Touch, Inc., which was engaged in the business of designing and assembling touch input panels. Carroll was joined by Vladeta Lazarevich later that same year. In 1978, a patent application for a photoelectric touch input device was filed in the U.S. Patent and Trademark Office (PTO), ultimately issuing as the '443 patent, which named Carroll and Lazarevich as coinventors. Lazarevich left Carroll Touch in 1979 to start his own company, EMS, which competed against Carroll Touch in the touch input panel market. In 1980, Lazarevich was sued by Carroll Touch in state court for breach of his employment contract. Judgment was rendered in favor of Lazarevich.

On May 11, 1987, Carroll Touch filed a complaint alleging infringement of the '443 patent by EMS. EMS answered by denying infringement and alleging patent invalidity. It also filed counterclaims alleging that Carroll Touch, in bringing its infringement suit, engaged in an anticompetitive scheme to restrain trade and committed acts of unfair competition and abuse of process.[1] Additionally, EMS counterclaimed for a judgment declaring the '443 patent invalid and not infringed.

The district court severed the antitrust counterclaims and a bench trial was conducted on the patent infringement claim in September 1991. Although Carroll Touch originally alleged infringement of claims 1–3, 16, and 20–25 when it filed suit, only dependent claim 24 was asserted at trial. The district court found that claim 24 was not infringed literally or under the doctrine of equivalents because the light beams of the accused EMS devices intersected and thus were not "spaced apart" as was required by claim 1, from which claim 24 depends. Further, the court held that the entire '443 patent was invalid under 35 U.S.C. §§ 102, 103 (1988).

In so concluding, the court rejected Carroll Touch's argument that EMS should be estopped under the doctrine of assignor estoppel from challenging the validity of the '443 patent.

## DISCUSSION

### A. *Patent Infringement*

On appeal, Carroll Touch argues that the district court clearly erred in finding that the accused EMS devices did not infringe claim 24 of the '443 patent and that it erred in holding that the patent was invalid. We first address the issue of infringement.

■ The law is well established that the determination whether a claim has been infringed requires a two-step analysis. First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992); *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1578, 6 USPQ2d 1557, 1559 (Fed. Cir.1988). A claim covers an accused device if the device embodies every limitation of the claim, either literally or by an equivalent. *Read,* 970 F.2d at 822, 23 USPQ2d at 1431.

■ Although claim 24 was the only claim asserted at trial, it is dependent on claim 23, which in turn is dependent on claim 16, which in turn is dependent on independent claim 1. Thus, in addressing whether claim 24 was infringed by the accused EMS products, we must consider whether claim 1 was infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553, 10 USPQ2d 1201, 1208 (Fed.Cir.1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed[.]").

The district court's finding of noninfringement turned on its interpretation of the term "spaced apart" found in a means-plus-function limitation[2] of claim 1. That limitation recites

---

1. AMP, Inc., the corporate parent of Carroll Touch, was named as a third party defendant to the antitrust counterclaims.

2. 35 U.S.C. § 112 ¶ 6 (1988).

means for mounting said light sources and said photosensitive device on said housing to produce said sets of beams in two separate surfaces, *spaced apart along the direction normal to the plane of said opening,* counting means for each of said sets for counting a number of interrupted beams in each set, and means for producing output signals indicating the number counted by each counter. [Emphasis added.]

At trial, the court heard expert testimony presented by both parties regarding whether the accused devices met that limitation. The court rejected the testimony of Carroll Touch's witnesses who testified that although the light beams of the accused devices intersected, they were nevertheless "spaced apart" within the meaning of claim 1. The court concluded that "the light beams intersect and therefore are not spaced apart as required by the patent," 24 USPQ2d at 1352, and accordingly found no literal infringement. Similarly, the district court found that the accused devices did not infringe claim 24 under the doctrine of equivalents.[3]

Carroll Touch argues that the court erred in construing the claim limitation to require that the beam surfaces (*i.e.,* the X-beam and Y-beam arrays) be totally spaced apart, with no intersection. It does not dispute that the EMS devices all have beam surfaces which intersect to varying degrees and that the EMS device that uses coplanar beam surfaces having total surface intersection does not infringe the '443 patent. However, Carroll Touch contends that the devices that use curved beam arrays are within the claim limitation because such devices have beam surfaces that are spaced apart for most of their respective surface areas.

■■■ Claim construction is a question of law which we review *de novo. See ZMI,* 844 F.2d at 1578, 6 USPQ2d at 1559; *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1579, 12 USPQ2d

1382, 1385 (Fed.Cir.1989). "In defining the meaning of key terms in a claim, reference may be had to the specification, the prosecution history, prior art, and other claims." *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1566, 24 USPQ2d 1321, 1327 (Fed.Cir.1992). Moreover, the words of a claim are generally given their ordinary and accustomed meaning, unless it appears from the specification or the file history that they were used differently by the inventor. *See Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992).

■■■ In particular, Carroll Touch maintains that the claimed invention contemplates use of curved beam surfaces that are positioned as closely as possible to the display surface to eliminate an optical phenomenon known as parallax[4] and that some intersection between the beam surfaces must occur when they are so situated. It thus contends that the term "spaced apart" allows for some intersection of the beam surfaces. In support of that contention, Carroll Touch refers to portions of the specification that purportedly disclose embodiments of the invention having beam surfaces which are curved to conform to the curved display surface and hence intersect.

We look to the specification for assistance in construing a claim. Although the specification of the '443 patent discloses the use of curved beam surfaces, it does not teach that the space between the beam surfaces should be minimized in order to diminish parallax. Nor does the specification indicate that use of curved beam surfaces necessarily results in intersection of the beam surfaces. In fact, the specification confirms that the term "spaced apart" does not include devices whose beam surfaces intersect. The specification expressly discloses that "[t]he separation of the X and Y beam planes permits the

---

**3.** Because of its finding regarding the "spaced apart" term contained in the "mounting means" limitation of claim 1, the district court did not rule on whether the accused devices met the "means for producing output signals" limitation of the claim. Due to our resolution of the infringement issue, we also need not address whether the latter limitation was met.

**4.** Parallax occurs when two spaced objects are in alignment when viewed from one position and not in alignment when viewed from another position.

apparatus to discriminate against small insects, and to calculate the difference in the time between interruption of the beams in the two ... planes." Col. 6, lines 23–27. Were the claimed invention to have intersecting beam surfaces, in those areas where the beams intersected the invention would be unable to achieve its stated objective of distinguishing valid inputs from stray inputs caused by small foreign objects or determining the velocity of an object approaching the touch panel. Thus, the specification does not disclose that the beam surfaces of the claimed invention intersect.

The prosecution history also undermines Carroll Touch's interpretation of the "spaced apart" term. Claim 1 as originally filed was rejected by the examiner under 35 U.S.C. § 103 as being obvious in view of U.S. Patent No. 3,727,069 to Crittenden because "Crittenden describes both two 'surfaces' in a single X–Y array sensor and two such arrays for X–Y–Z sensing." In response, Carroll Touch argued that "the light sources and photosensitive devices illustrated in [Crittenden] define merely *one single plane of beams*" [emphasis added] as distinguished from the claimed invention which has two separate surfaces, spaced apart along the direction of the z-axis, the direction normal to the display screen. Carroll Touch's position before the PTO is inconsistent with its present construction of the claim limitation. By attempting to distinguish claim 1's requirement of "two separate surfaces, spaced apart" from Crittenden's disclosure of "one single plane of beams," Carroll Touch necessarily was arguing that the beam planes of the claimed invention did not intersect.[5] In light of the specification and the prosecution history of the '443 patent, we cannot accept the interpretation of the term "spaced apart" urged upon us by Carroll Touch. We agree with the district court that the claim limitation requires that the two separate beam surfaces be spaced apart over the entirety of their respective surface areas, without any intersection.

We now address whether claim 1, as properly construed, has been infringed. The burden is on the patent owner to prove infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889, 8 USPQ2d 1468, 1477 (Fed.Cir.1988). In order to meet a means-plus-function limitation, an accused device must (1) perform the identical function recited in the means limitation and (2) perform that function using the structure disclosed in the specification or an equivalent structure. *See Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042, 25 USPQ2d 1451, 1454 (Fed.Cir.1993). That factual determination is reviewed for clear error. *See Durango Assocs., Inc. v. Reflange, Inc.*, 843 F.2d 1349, 1357, 6 USPQ2d 1290, 1295 (Fed.Cir.1988).

The production of two separate beam surfaces that are spaced apart along a direction normal to the plane of the display is, as discussed above, an essential function of the "means for mounting" clause of claim 1. The structures disclosed in the specification by which that function is achieved all have beam surfaces that do not intersect. Thus, the accused devices, by having beam surfaces that intersect, do not perform the identical function stated in the means limitation of claim 1 and do not use a structure taught in the specification or an equivalent structure. We agree with the district court that the accused EMS devices do not literally infringe claim 24 of the '443 patent because they do not meet the means limitation of claim 1.

Carroll Touch argues that if claim 24 is not held infringed literally, then it should be deemed infringed under the doctrine of equivalents. It asserts that the accused devices perform substantially the same overall function in substantially the same way to obtain substantially the same overall result as the claimed invention. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950).

---

5. Further, the district court found that Carroll Touch had failed to disclose to the PTO the existence of a device, known as the Xerox Project 105, which had curved intersecting beam surfaces and which was made more than a year before the '443 patent application was filed. The court noted in dictum that the failure to disclose this prior art might have constituted inequitable conduct if Carroll Touch's present interpretation of the claim limitation were correct.

We have stated that determining whether there is infringement under the doctrine of equivalents "does not mean one can ignore claim limitations." *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). Indeed, infringement cannot be established unless every limitation of a claim is satisfied either exactly or by an equivalent in the accused device. *See La-Bounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 867 F.2d 1572, 1577, 9 USPQ2d 1995, 1999 (Fed.Cir.1989).

Our holding concerning the "spaced apart" requirement of claim 1 is controlling in an infringement determination under the doctrine of equivalents. The claim requires that the beam surfaces be spaced apart over the entirety of their respective surfaces areas. It is undisputed that all of the accused EMS devices have beam surfaces that intersect to some degree. That difference between the claimed invention and the accused devices is neither unimportant nor insubstantial. The claimed invention could not operate as intended if its beam surfaces were not spaced apart for the entirety of their surface areas. For example, as noted earlier, in those areas where no such space existed, *i.e.,* where the beam surfaces intersect, the device would not be able to determine the time interval between beam surface breaks nor would it be able to distinguish between a user's valid input and the accidental input caused by a small object such as an insect.

Accordingly, we conclude that devices having intersecting curved beam surfaces do not perform substantially the same overall function in substantially the same way to obtain substantially the same result as the claimed invention. We agree with the district court that the accused devices do not infringe claim 24 under the doctrine of equivalents.

## B. *Patent Validity—Assignor Estoppel*

Although we affirm the district court's finding that claim 24 was not infringed by the accused devices, we consider it desirable to review the court's declaratory judgment holding the '443 patent invalid so that neither Carroll Touch nor the public are left with unnecessary uncertainty concerning the validity of the claims at issue. *See Cardinal Chem. Co. v. Morton Int'l, Inc.,* — U.S. —, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721 (1993) (finding of noninfringement alone does not justify vacatur of declaratory judgment of invalidity).

Carroll Touch claims that the district court erred by not prohibiting EMS from challenging the validity of the '443 patent under the doctrine of assignor estoppel. "Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity. The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor." *Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220, 1224, 6 USPQ2d 2028, 2031 (Fed.Cir.) (citation omitted), *cert. dismissed,* 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 978 (1988). A determination whether assignor estoppel applies in a particular case requires a balancing of the equities between the parties. *See Q.G. Prods., Inc. v. Shorty, Inc.,* 992 F.2d 1211, 1213, 26 USPQ2d 1778, 1780 (Fed.Cir.1993); *Diamond Scientific,* 848 F.2d at 1225, 6 USPQ2d at 2031. That determination is a matter committed to the sound discretion of the trial court. *Cf. A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041, 22 USPQ2d 1321, 1335 (Fed.Cir.1992) (in banc). Thus, on appeal, we review whether the district court abused its discretion in deciding not to apply the doctrine to EMS.

Vladeta Lazarevich is one of the named inventors of the '443 patent and is the founder, president, principal executive officer, and owner of a controlling interest in EMS.[6] On April 1, 1978, Lazarevich signed a "Declaration and Power of Attorney," which was filed in the PTO as part of the patent application that later issued as

---

6. EMS does not dispute that Lazarevich is in privity with EMS for purposes of the assignor estoppel doctrine.

the '443 patent. In signing the document, Lazarevich declared that he was "the original, first and ... a joint inventor of the invention" claimed in the application. Furthermore, he attested to his knowledge and belief, *inter alia*, that the invention claimed in the application was not subject to any of the statutory bars recited in 35 U.S.C. § 102 (1988). On that same day, Lazarevich assigned "the entire right, title and interest" in the claimed invention to Carroll Touch, "[f]or and in consideration of One Dollar ($1.00) to us in hand paid and other valuable considerations [sic]."

Carroll Touch asserted at trial that the doctrine of assignor estoppel applied as matter of law to preclude EMS from challenging the validity of the '443 patent.[7] In rejecting that argument, the district court concluded that the equities weighed against application of assignor estoppel and in favor of allowing EMS to contest the validity of the patent.

Specifically, the court found that Lazarevich played only a minimal role in the development of the claimed invention and received no compensation for either the invention or its assignment. More importantly, the court determined that at the time he executed the assignment, Lazarevich did not realize that he was assigning his rights to the invention claimed in the '443 patent. At trial, Lazarevich testified that his primary contribution to the claimed invention was a device called a dynamic level shifter (DLS), on which a separate patent was later sought and obtained. Lazarevich also claimed that when he was confronted with the application and the agreement, he believed that they related only to the DLS application. Lazarevich stated that he did not realize until he received copies of the documents several days later that they related to the claimed invention. Based on this testimony, the court concluded that Lazarevich was "led by the hand down the primrose path when he signed, and he didn't have any idea what it was he was signing." 24 USPQ2d at 1354.

A trial court's findings of fact based on determinations of witness credibility are due great deference on appeal. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 575–76, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985). However, where we view the court's account of the evidence to be implausible in light of the record viewed in its entirety, that finding cannot stand. *See id.* at 573–74, 105 S.Ct. at 1511–12. We consider that to be the case here.

First, if Lazarevich was indeed mistaken as to what he was assigning under the assignment agreement, that mistake was attributable solely to his own imprudence. EMS does not dispute that Lazarevich is an intelligent, well educated, and sophisticated individual and that he was fully capable of reading and comprehending the agreement at the time it was executed. Nor does EMS claim that Lazarevich was under duress or was otherwise incompetent to execute the agreement. Although EMS contends that Lazarevich was deceived by Arthur Carroll into assigning his rights in the claimed invention to Carroll Touch, it fails to identify any evidence of record to substantiate that accusation.

Second, Lazarevich's claim that he played only a minimal role in the development of the claimed invention is directly contradicted by testimony he gave during a previous lawsuit in 1980 in which he was sued by Carroll Touch for breach of his employment contract. During that trial, Lazarevich stated that he was a "principal inventor" of the device claimed in the '443 patent. Thus, the district court clearly erred in finding that Lazarevich did not have any "special knowledge" of the claimed invention.

Third, the district court placed great weight upon its finding that Lazarevich did not receive any compensation for either the application or the assignment of the claimed invention. EMS does not dispute that Lazarevich was compensated as an employee of Carroll Touch before he left in June, 1979,

---

7. Previously, on August 12, 1991, Carroll Touch filed a motion *in limine* arguing that because Lazarevich assigned his right in the claimed invention and attested to its patentability, EMS was estopped as a matter of law from contesting the patent's validity under the doctrine of assignor estoppel. The motion was denied. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 779 F.Supp. 101, 20 USPQ2d 1638 (C.D.Ill.1991).

and that he received such other valuable consideration for the assignment, as well as one dollar. Employment, salary, and bonuses are all valid forms of consideration. *See Shamrock Technologies, Inc. v. Medical Sterilization, Inc.,* 903 F.2d 789, 794, 14 USPQ2d 1728, 1733 (Fed.Cir.1990). The district court thus clearly erred in finding that Lazarevich was not compensated.

 Finally, in declining to apply the doctrine of assignor estoppel to EMS, the district court apparently did not recognize that the statements contained in the Declaration were made by Lazarevich under oath and "with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon." Even if we were to assume that he was testifying truthfully when he stated that he did not know what he was signing when he averred that he was an inventor of the claimed subject matter, we can hardly permit a party to avoid the effects of an equitable doctrine by claiming, as Lazarevich does here, that he violated an oath. Equity cannot aid the violator of an oath.

EMS, in fact, has admitted that "the matters sworn to by Vladeta D. Lazarevich on April 1, 1978, were believed by him at such time to be true with respect to the invention recited in the patent application as filed ... on April 24, 1978." We have previously held that when, as here, "the inventor-assignor has signed the Oath, Power of Attorney and Petition, which attests to his belief in the validity of the patents, and has assigned the patent rights to another for valuable consideration, he should be estopped from defending patent infringement claims by proving that what he assigned was worthless." *See*

*Diamond Scientific,* 848 F.2d at 1226, 6 USPQ2d at 2032.

In light of the above, to allow Lazarevich now to challenge the validity of the '443 patent would "work an injustice against the assignee." *Id.* at 1224, 6 USPQ2d at 2031. We conclude that the equities weigh in favor of applying the doctrine of assignor estoppel to EMS and thus it may not defend itself from charges of infringement by derogating the validity of a patent subject to the assignment. The district court clearly abused its discretion in deciding that the doctrine of assignor estoppel did not apply to EMS. Accordingly, that portion of the district court's judgment holding claim 24 invalid is vacated.[8]

## C. *Antitrust Counterclaims*

 On conclusion of the trial on patent infringement, the district court addressed EMS' counterclaims, in which it alleged that (1) Carroll Touch's patent infringement suit was part of a scheme or plan to restrain trade in and monopolize the touch input panel market in violation of federal antitrust laws and (2) Carroll Touch's conduct in bringing the action constituted unfair competition and abuse of process under Illinois law. Carroll Touch moved for summary judgment on the counterclaims on the ground that it was immune from antitrust liability under *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). In opposition, EMS maintained that Carroll Touch's conduct fell within the "sham" exception to the *Noerr* immunity rule because the lawsuit was instituted to harass and harm EMS competitively. The district court granted Carroll Touch's motion for summary judgment on

8. Although claim 24 was the only claim asserted at the infringement trial, the district court declared the entire '443 patent invalid under 35 U.S.C. §§ 102, 103 (1988). Both parties agree that the court did not have jurisdiction over any claims other than those in controversy and thus erred as a matter of law in granting declaratory judgment of invalidity of any claims other than claim 24. The presumption of validity extends to each claim of a patent, independently of the

validity of others. 35 U.S.C. § 282 (1988). Because Carroll Touch only asserted and litigated the infringement of claim 24 and the claims from which it depends, and there was an absence of a case or controversy regarding the remaining claims of the '443 patent, we also vacate that portion of the district court's judgment invalidating claims other than claim 24. *See Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1399, 222 USPQ 943, 950 (Fed.Cir.1984).

EMS' counterclaims.[9]

On its cross-appeal, EMS argues that the district court erred in granting Carroll Touch's motion for summary judgment on the counterclaims because there was a genuine issue of fact regarding whether Carroll Touch's action was baseless on its merits and improperly motivated by anticompetitive intent. Specifically, EMS claims that the evidence shows that the infringement action was instituted unlawfully by Carroll Touch for the sole purpose of gaining secret information, to harm EMS competitively, and to deter potential competitors from entering the market.

In *Noerr,* the Supreme Court held that federal antitrust laws are not violated by conduct of private parties that consists merely of attempts to solicit governmental action, for example by influencing the passage or enforcement of legislation, which may have an anticompetitive effect. *See also United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The *Noerr* immunity rule has since been extended to protect those who petition for other forms of governmental action. *See, e.g., California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (administrative and judicial proceedings); *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) (municipal ordinances). The *Noerr* Court acknowledged, however, that activity which was "ostensibly directed toward influencing governmental action" would not be immune from antitrust liability if it constituted "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." 365 U.S. at 144, 81 S.Ct. at 533.

▪ The Supreme Court has had occasion to further define the "sham" exception to *Noerr* as it applies in the litigation context. In *California Motor Transport,* the Supreme Court addressed whether an alleged conspiracy among private parties to restrain trade and commerce by excluding competitors from participating in the adjudicative process was actionable under the antitrust laws. The Court held that the allegations that the parties "instituted the proceedings and actions ... with or without probable cause, and regardless of the merits of the cases," *id.,* 404 U.S. at 512, 92 S.Ct. at 612, came within the "sham" exception to *Noerr.* More recently, in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* —— U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611, 26 USPQ2d 1641 (1993), the Court elaborated on *California Motor Transport* by setting out a two-part definition of "sham" litigation:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor," *Noerr,* [365 U.S] at 144 [81 S.Ct. at 533] (emphasis added), through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon," *Omni,* [499 U.S. at 380, 111 S.Ct. 1354].

*Id.,* —— U.S. at ——, 113 S.Ct. at 1928, 26 USPQ2d at 1646. Thus, the Court has made clear that the determination whether a lawsuit is deprived of *Noerr* immunity as a sham is not subject only to a subjective standard. Rather, the "sham" definition pronounced in *Professional Real Estate* incorporates an objective as well as a subjective prong.

In ruling on the motion for summary judgment in the instant case, the district court determined that EMS failed to come forth with evidence sufficient to create a genuine issue of material fact as to whether the lawsuit fell within the "sham" exception. The

---

9. The district court concluded that its findings with respect to the antitrust counterclaims were also dispositive of those based on state unfair competition and abuse of process law.

court concluded that Carroll Touch's infringement suit, albeit unsuccessful, was not baseless or frivolous and was brought to obtain a favorable result with regard to enforcement of its patent.

■ "We must approach a federal antitrust claim as would a court of appeals in the circuit of the district court whose judgment we review." *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 875, 228 USPQ 90, 99 (Fed.Cir. 1985); *U.S. Philips Corp. v. Windmere Corp.,* 861 F.2d 695, 702, 8 USPQ2d 1885, 1890 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989). Thus, we look to the law of the Seventh Circuit for guidance in reviewing the propriety of the district court's grant of Carroll Touch's motion for summary judgment on EMS' antitrust counterclaims.

Under the law of the Seventh Circuit, we review the district court's decision to grant summary judgment *de novo. Aetna Casualty & Surety Co. v. Chicago Ins. Co.,* 994 F.2d 1254, 1256 (7th Cir.1993). We thus determine for ourselves whether the evidence is genuinely conflicting on material issues of fact and, if not, whether the movant is entitled to summary judgment as a matter of law. *See Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir. 1991).

On motion for summary judgment, the movant bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although the evidence of record must be viewed in a light most favorable to the nonmoving party, with all reasonable inferences drawn in its favor, *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962), the nonmoving party must do more than present minimal evidence on an issue it asserts is disputed. Rather, the

standard for establishing the existence of a "genuine" issue of material fact is that there must be sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

EMS has not identified any evidence of record that sufficiently establishes a genuine issue regarding whether Carroll Touch's infringement action was "so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Professional Real Estate,* —— U.S. at ——, 113 S.Ct. at 1929, 26 USPQ2d at 1647. We agree with the district court that other than bald, unsupported assertions, "EMS has provided no evidence that [Carroll Touch] brought the infringement action only to harass EMS by forcing it to defend a patent infringement suit." Op. at 1577. Because EMS failed to pierce Carroll Touch's *Noerr* immunity with proof that the infringement action was objectively baseless or frivolous, we need not consider Carroll Touch's subjective motivations in bringing the suit.[10] *See Professional Real Estate,* —— U.S. at ——, 113 S.Ct. at 1931, 26 USPQ2d at 1648. Accordingly, we hold that the district court did not err in granting summary judgment in favor of Carroll Touch on EMS' counterclaims.

### D. *Attorney Fees*

■ EMS also cross-appeals the district court's order denying its motion for the recovery of attorney fees under 35 U.S.C. § 285 (1988). EMS argues that the district court issued no factual findings as to whether this was an "exceptional case" and thus a remand is necessary to allow the court to make the requisite findings of fact and to decide whether an award of attorney fees is warranted.

In support of its argument, EMS relies upon our decisions in *Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 13 USPQ2d 1967 (Fed.Cir.), *cert. denied,* 498 U.S. 851, 111

---

10. Thus, we do not decide whether Carroll Touch instituted its infringement suit in "bad faith," *see, e.g., Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 228 USPQ 90 (Fed.Cir.1985), or whether it was otherwise motivated by anticompetitive intent. Further, we need not decide the applicability of *Noerr* immunity to a litigant who sues on a patent procured by fraud, *see Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), because that issue is not raised here.

S.Ct. 142, 112 L.Ed.2d 109 (1990); *Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 7 USPQ2d 1606 (Fed.Cir.1988); and *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,* 781 F.2d 198, 228 USPQ 367 (Fed.Cir.1986), in which remand was deemed necessary for further "exceptional case" findings. Those cases, however, are distinguishable from the instant case. Unlike in *Badalamenti, Fromson,* or *S.C. Johnson,* the record here does provide a sufficient basis upon which we can review the exercise of the trial court's discretion. We previously explained in *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 15 USPQ2d 1481 (Fed.Cir.1990) that

> [i]n *Fromson, S.C. Johnson,* and *Badalamenti,* we were forced to "regretted" and "unfortunate" remands because we lacked a record on which we might undertake ... a discernment of the basis for unexpressed findings. A remand, with its accompanying expenditure of additional judicial resources in a case thought to be completed, is a step not lightly taken and one that should be limited to cases in which further action must be taken by the district court or in which the appellate court has no way open to it to affirm or reverse the district court's action under review. [Citation omitted.] Though findings on "exceptional case" and reasons underlying the discretionary action on fees are helpful to an appellate court, remand should not be a matter of rote in every case in which findings and reason are not expressly set forth. An appellate court need not close its eyes to the record where, as in this case, there is a way clearly open to affirm the district court's action.

910 F.2d at 814, 15 USPQ2d at 1488–89.

As the party moving for attorney fees, the burden was on EMS to prove the exceptional nature of the case by clear and convincing evidence. *See Reactive Metals & Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir.1985). EMS' contention that the case was exceptional was based primarily on a number of "circumstances" which it claimed warranted such a finding, *viz.,* that its expert witness testified at trial that no reasonable person could find infringement, that Carroll Touch did not subscribe to its interpretation of the "spaced apart" term until the 1987 infringement suit, and that patent counsel for AMP advised AMP management that the accused EMS devices did not infringe the '443 patent.[11] Those circumstances, however, were raised below by EMS and considered by the court. In denying EMS an award of attorney fees, the district court necessarily found that they did not establish that the case was exceptional under section 285. There is no evidence of record that Carroll Touch pursued its patent infringement claim without a reasonable belief in its merits. EMS has thus not shown that the court's implicit finding that this was not an exceptional case under section 285 was clearly erroneous or that the court abused its discretion in denying its motion for attorney fees. *See Spectra–Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1537, 3 USPQ2d 1737, 1746 (Fed.Cir.), *cert. denied,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). Here, as in *Consolidated Aluminum,* "[n]o useful purpose would be served by a remand to enable the district court to tell us in express terms what we already know from the record." 910 F.2d at 815, 15 USPQ2d at 1489. In view of the record as a whole, we conclude taht the district court's finding that the case was not exceptional was not clearly erroneous and that it did not abuse its discretion in denying EMS' motion for attorney fees.

## CONCLUSION

The district court's determination that the accused EMS devices did not infringe claim 24 of the '443 patent was not clearly erroneous and thus we affirm its judgment holding that claim not infringed. The district court erred in concluding that EMS is not estopped

---

11. Mr. Boles, patent counsel for AMP, testified that he was asked on at least two occasions by AMP to give an opinion regarding infringement of the '443 patent by EMS and that he concluded that there was no infringement because of the spaced apart term. No evidence in the record supplied to us on appeal, however, indicates that Mr. Boles' "opinions" were comprehensive and thorough or in writing. From what we know, they may have been "off the top of one's head" views.

from challenging the validity of the '443 patent under the doctrine of assignor estoppel. Further, because claim 24 was the only claim asserted at the infringement trial, we vacate the court's judgment holding the entire '443 patent invalid. The district court did not err in concluding that Carroll Touch was entitled to *Noerr* antitrust immunity and thus we affirm its grant of summary judgment in favor of Carroll Touch on EMS' counterclaims. Finally, the district court did not clearly err in determining that the case was not exceptional and did not abuse its discretion in denying EMS' motion for attorney fees.

COSTS

No costs.

**_AFFIRMED–IN–PART and VACATED–IN–PART._**