**Howard Monte ROME, Plaintiff,**

v.

**GALILEAN SEAFOODS, INC., Defendant.**

**Civil Action No. 95–10144–REK.**

United States District Court, D. Massachusetts.

Aug. 11, 1997.

---

Robert S. Wolfe, Wolfe Associates, Boston, MA, for Plaintiff.

Howard Monte Rome, Rockport, MA, pro se.

David B. Gittelsohn, Soble, VanDam, Pearlman & Gittelsohn, Chestnut Hill, MA, Rosemary A. Traini, Gittelsohn, Traini & Cohen, Framingham, MA, for Defendant.

### Opinion

KEETON, District Judge.

Pending before the court is Defendant's Motion for Summary Judgment (Docket No. 49), opposed by plaintiff (Docket No. 53). Because I conclude that defendant has carried its burden of showing that no genuine issue of material fact remains in dispute in this case, defendant's motion will be granted.

### I. Background

Both parties are active in the seafood processing industry. Plaintiff Howard Monte Rome resides in Gloucester, Massachusetts, and has for many years been active in developing new methods for processing seafood products. Defendant Galilean Seafoods, Inc., a Rhode Island corporation that practices business in Massachusetts, engages in the business of purchasing, processing, marketing and selling seafood products.

This litigation involves the processing of clams for human consumption. On March 23, 1987, plaintiff applied for a patent with the United States Patent and Trademark Office for his invention of a method for processing clams. Plaintiff was issued United States Letters Patent No. 4,715,091 (" '091") on December 29, 1987. Entitled "Process for Preparing Clam Cutlet," the '091 patent specification described what plaintiff called "a novel process for fuller utilization of the meat of the clam."

As described in the patent specification, clams are made up of muscles, the "tongue" (alternately called the "foot"), siphons, and "straps." The tongue, the largest meat portion of a clam, is the portion generally prepared for food products.

Without processing, the tongue is usually too tough to be easily cooked and consumed in one piece. Traditionally, the tongue is sliced or chopped up into small pieces for eventual use in foods like clam chowder. The aim of the plaintiff's invention, as stated in the patent specification, is to identify a method by which larger pieces of the clam tongue can be processed and prepared.

The '091 patent refers to several patents as prior art. The prior art consists of numerous methods and devices for shucking the clams, extracting or removing the clam meat, cleaning or washing the meat, separating the viscera from the tongue portion and cutting or chopping the tongue into small portions. According to plaintiff's patent specification, however, "[n]one of these references disclose using the tongue or foot of the clam as a one-piece food product."

To remedy this perceived deficiency, plaintiff's patent discloses a method for cleaning and preparing clam tongues, by "butterflying" the tongues into "cutlets," and passing them through a mechanical meat tenderizer. In particular, plaintiff made the following claims in his patent:

1. A method for preparing a one-piece clam tongue for consumption, which comprises extracting the clam from its shell, removing the viscera from said tongue, separating the tongue from any remaining flesh, butterflying said tongue and passing it through a mechanical meat tenderizer to provide thereby a tender, edible one-piece clam cutlet.

2. The process of claim 1 wherein said tongue is washed with water prior to said butterflying step.

3. The process of claim 1 wherein said tongue is cut along one of its vertical edges to form the butterfly cutlet.

4. The process of claim 1 wherein said tongue is cut along one of its horizontal edges to form the butterfly cutlet.

5. The process of claim 1 wherein said tongue is tenderized and then subsequently butterflied.

6. The process of claim 1 wherein said tongue is butterflied first and then tenderized by a mechanical tenderizer.

7. A method for providing a one-piece clam cutlet which comprises sequentially:

 (a) extracting substantially all the clam flesh from its shell;

 (b) separating any viscera from any edible meat parts of the extracted clam;

 (c) discarding the extracted viscera;

 (d) washing the remaining meat parts of the clam to remove sand and other debris;

 (e) separating the meat parts into the tongue, the mantles, the siphons and the adductor muscles;

 (f) bisecting said tongue in a manner whereby the bisected pieces are connected at folding edges; and

 (g) passing said tongue through a mechanical meat tenderizer.

8. The process of claim 7 wherein said tongue is washed with water prior to said butterflying step.

9. The process of claim 7 wherein said tongue is cut along one of its vertical edges to form the butterfly cutlet.

10. The process of claim 7 wherein said tongue is cut along one of its horizontal edges to form the butterfly cutlet.

11. The process of claim 7 wherein said butterflying step includes separating the butterflied portions into two separate parts.

The '091 patent does not claim a particular tenderizer apparatus or device, but instead refers to previous patents for mechanical meat tenderizer blades. Plaintiff does not have a protected patent interest in the mechanical tenderizer blades.

In April 1989, plaintiff assigned his rights in the '091 patent to a corporation owned and operated by him. At the same time, the corporation entered into a licensing agreement with Bluegold Seafarms, Ltd., under which Bluegold obtained the tenderizing equipment ̣referred to-in the '091 patent. Plaintiff's corporation also developed recipes and marketing materials for Bluegold designed to be used in conjunction with plaintiff's patented process.

In early 1992, Galilean purchased the tenderizing equipment from Bluegold. Galilean also purchased artwork and marketing materials from Bluegold depicting butterflied clam tongues. In the spring of 1992, Rome attended an annual seafood trade show in Boston. According to Rome, he observed defendant at the trade show offering cooked butterflied clam tongues as samples and displaying the artwork obtained from Bluegold. This same artwork, depicting butterflied clam tongues, has also been used by Galilean in its advertising in various trade magazines. Based on these observations, and on plaintiff's observing defendant's practice of selling clam products such as "medallions," "fillets," "fingers," "tenders," and "bites," and clams cut in halves or thirds, plaintiff informed defendant that it was infringing the '091 patent.

Plaintiff filed this civil action on January 24, 1995. In the First Amended Complaint (Docket No. 15), plaintiff asserts the following four claims: (1) that defendant directly infringed plaintiff's patent for a process for preparing clam cutlets in violation of 35 U.S.C. § 271(a); (2) that defendant induced others to infringe plaintiff's patent in viola-

tion of 35 U.S.C. § 271(b); (3) that defendant was liable for contributory infringement in violation of 35 U.S.C. § 271(c); and (3) that defendant's conduct was unfair and deceptive in violation of Mass. Gen. Laws ch. 93A.

Defendant's first motion for summary judgment (Docket No. 21, filed September 20, 1996) was denied without prejudice on January 22, 1997, in light of the pendency before the Supreme Court of a case potentially relevant to this matter. Defendant filed the motion now pending on May 15, 1997, asking the court to grant summary judgment as to plaintiff's claims for infringement and inducement to infringe, and as to any claim plaintiff might be making regarding the licensing agreement between plaintiff's corporation and Bluegold.

At a hearing held before the court on July 2, 1997, plaintiff stated that he was voluntarily withdrawing his claim for contributory infringement. At the same hearing, defendant orally moved for summary judgment on plaintiff's claim under Mass. Gen. Laws ch. 93A. Plaintiff was given leave to file a written submission regarding disposition of the chapter 93A claim.

## II. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party and 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1159 (1st Cir.1994) (citation omitted). Once the party moving under Rule 56 has made a showing that meets the movant's initial burden, the burden falls on the nonmoving party to set forth specific facts that show the existence of a genuine dispute regarding a material fact. Fed.R.Civ.P. 56(e). In determining whether summary judgment should be granted, I read the record, and all reasonable inferences to be drawn from the record, in the light most favorable to plaintiff. *Data Gen.*, 36 F.3d at 1159.

## III. Analysis of a Patent Claim

Analysis of a claim of patent infringement requires two steps: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys.*, 15 F.3d 1573, 1576 (Fed.Cir.1993). Claim construction is a matter for the court; whether the accused process infringed the claim as construed is a question of fact to be determined by a jury. *See Markman v. Westview Instruments, Inc.*, ─ U.S. ─, ─ ─ ─, 116 S.Ct. 1384, 1393–96, 134 L.Ed.2d 577 (1996). Of course, if a court, having construed a claim, determines that the record shows no genuine dispute of fact that is material to plaintiff's assertion that the accused process infringed the patented one, summary judgment is appropriate. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, ─ U.S. ─, ─ n. 8, 117 S.Ct. 1040, 1053 n. 8, 137 L.Ed.2d 146 (1997) (noting that, in cases involving the doctrine of equivalents, "if no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment").

To determine the meaning of terms contained in a patent claim, a court looks to the claims, the specification, and the prosecution history of the patent. *See Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed.Cir.1991). Claim terms are to be given their ordinary meaning to one of skill in the art unless another meaning is evident from the patent history. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed.Cir. 1992). "[W]here a disputed term would be understood to have its ordinary meaning by one of skill in the art from the patent and its history, extrinsic evidence that the inventor may have subjectively intended a different meaning does not preclude summary judgment." *Id.*

The burden is on the patent holder to prove infringement by a preponderance

of the evidence. *Carroll Touch*, 15 F.3d at 1576. To establish infringement, a patent owner must show that every limitation set forth in the patent claim is met, exactly or by a substantial equivalent, by the accused process. *Id.* All claim limitations must be considered meaningful, and failure to satisfy even one of the limitations is sufficient to negate a claim of infringement. *See Warner–Jenkinson Co.*, — U.S. at —, 117 S.Ct. at 1049; *Intellicall*, 952 F.2d at 1389.

 Although a court looks to the specification to determine the meaning of a term set forth in a patent claim, "[t]he claim language itself defines the scope of the claim." *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1552 (Fed.Cir.1997). *See also Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1369 (Fed.Cir.1996) (noting that "[t]he claims, [and] not the specification, measure the protected patent right to exclude others"). Thus, a patent holder may not use language in the specification to broaden what is claimed in the patent. *See United States v. Adams*, 383 U.S. 39, 49, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966) ("[S]pecifications cannot be utilized to expand the patent monopoly.").

## IV. Infringement

### A. *Defendant's Process*

The evidence before the court, including a videotape of defendant's process made as part of discovery in this case, shows that defendant's method includes the following steps: (1) the clam is shucked and separated from the shell, (2) the edible parts of the clam, including the tongue, are separated from the viscera, which is discarded, (3) the tongue is separated from the other meat parts, (4) the tongue is cleaned to remove sand, (5) the tongue is trimmed along the rough edge (where it was connected to the shell), (6) the tongue is passed through the mechanical tenderizer apparatus obtained from Bluegold, and (7) the tenderized tongues are packaged, frozen and shipped to customers. Nothing appears in the videotaped recording of defendant's process to show that the defendant "butterflies" the clam tongues.

Plaintiff asserts that this process infringes the '091 patent both literally and equivalently.

### B. *Literal Infringement*

The heart of the parties' dispute regarding infringement centers on the meaning of the terms "butterflying" and "bisecting" as contained in the patent claims. Claim 1 states that the patented method includes a step in which the tongue is "butterflied." Claim 7, the only other independent claim, describes sequentially a process including a step in which the tongue is "bisect[ed] ... in a manner whereby the bisected pieces are connected at a folding edge." Throughout the patent specification, the two terms are used interchangeably, and the dependent claims to claim 7 refer to the "butterflying step" of claim 7. "Butterflying" is in turn defined as occurring when "the feet are bisected leaving the two parts connected by a narrow part along one edge of the foot," and "is intended to include one or two-pieced tongues where the tongue is cut in half and either separated or maintained as a single piece." I conclude that claims 1 and 7 are referring to the same step when they use the term "butterflying" and "bisecting."

Aside from the explanations stated above, the patent specification and claims do not contain a detailed definition of the term "butterflying." The specification does contain, however, several figures depicting the anatomy of a clam, the clam tongue after being separated from the other organs, and a picture of the tongue after being butterflied or bisected in different ways. As depicted in Figure 2, the intact clam tongue is roughly triangular in shape, and is pictured with its flat surface facing the viewer. Forming the sides of the triangle in the figures is a short straightish edge (referred to as the "horizontal" edge), a longer straightish edge (the "vertical" edge), and a long, quite curved edge. When the clam is butterflied, a cut is made through the tongue, on a plane parallel to the flat surfaces of the clam, leaving either the vertical or the horizontal edges intact. The resulting thinner "flaps" are spread out, but remain connected at either the vertical or the horizontal edge (Figures 3 and 4, respec-

tively). The patent specification states that instead of leaving the edge intact, the resulting "flaps" can also be separated into two distinct pieces (Figure 5). As described in the specification, "[t]he butterfly cutlet consists of two mirror image sections ... connected by a focal portion."

 Based on the patent claims and specification, including the figures just described, I determine that, to someone skilled in the art of processing and preparing seafood, the term "butterflying" means cutting the clam tongue in half along the plane parallel to the flat surfaces of the tongue, and either leaving the resulting portions connected along one edge, or separating the portions into distinct pieces. I determine, as well, that the scope of plaintiff's patent claims is limited by the requirement that the clam tongue be butterflied as part of the patented process.

Plaintiff argues that the patent specification contains statements that support a broader interpretation of the scope of plaintiff's patent. In the section describing the figures and the "preferred embodiment" of the process, plaintiff stated that the clam tongue could be butterflied along the horizontal or vertical edge, and that, "if desirable, the tongue can be cut into two distinct parts or used as a single piece rather than butterfly." The specification also states that "[t]he tongue to be ultimately used can be (1) two or more portions of tongue, (2) one piece not butterflied or (3) the preferred butterflied as shown in drawing." In his opposition to defendant's motion for summary judgment, plaintiff suggests that the patent covers clam tongues that are not butterflied, and argues that, at the least, the specification supports construing claims 1 and 7 to include any step by which a clam tongue is "cut[ ] in half with or without a connecting edge."

Plaintiff's argument is not persuasive. Claims 1 and 7 both state, as a limitation to the claims, that the process involves a step in which the tongue is butterflied or bisected leaving a connecting edge. Neither of the claims states that the tongue could be left in one piece and also not butterflied. As noted in Part III, above, the claim language, not the specification, defines the scope of the

patent. *See, e.g., Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed.Cir. 1995) ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims."). Where, as here, the plaintiff states an express limitation in the claims (that the tongue be butterflied), the plaintiff cannot "avoid that claim limitation in a later infringement suit by pointing to one paragraph in his specification stating an alternative that lacks that limitation, and thus interpret the claim contrary to its plain meaning." *Unique Concepts*, 939 F.2d at 1562.

 My examination of the claims, in light of the specification, convinces me that the terms "butterflying" and "bisecting" (as used in claim 7) are to be understood as having the meaning stated above, namely, cutting the tongue in half, parallel to the flat surfaces, and either leaving the "mirror image" portions connected at one edge or separating them. Although the latter option might not ordinarily be understood as the result of butterflying (because the pieces are not connected), I conclude that the specification and the claims themselves plainly include this as part of the claim limitations.

This is not the case, however, with the definition urged on the court by plaintiff. The statements cited by plaintiff run contrary to the repeated descriptions in the specification and in every single one of the claims that the process includes a butterflying step as I have construed such a step. Under the trimming step performed by defendant, the tongue is cut on a plane *perpendicular* to the flat surfaces, and the piece near the rough edge of the tongue is removed and discarded. This step plainly does not fall within the definition of butterflying as that term is used in the claims of the '091 patent.

Even if I were to accept plaintiff's definition of butterflying (cut in half with or without a connecting edge), defendant's process would not fall under this definition. Nothing in the record supports a finding that defendant cuts the tongue in half. Plaintiff attempts to argue that the trimming step, which he contends removes up to 40% of the

weight of the processed tongue, is literally the same as bisecting, or cutting in half. Plaintiff fails to set forth any support, factual or otherwise, for an interpretation of the term "half" that is equated with "up to 40%."

Plaintiff contends that he has proffered evidence showing literal infringement on the part of defendant. Specifically, plaintiff argues that, based on plaintiff's testimony of his observation of the defendant engaged in selling cooked butterflied clam tongues at its trade show booth, a jury could infer that defendant performed the butterflying step. In addition, plaintiff proffers an invoice from Galilean showing that it sold to Chincoteague Seafood Company an order of "tender/cut half/tongues" and "tender/cut thirds/tongues." Plaintiff has not submitted any evidence that shows that defendant actually butterflied the clam tongues presented at the trade show or sold to Chincoteague. The evidence proffered by plaintiff would not be enough to support a finding by a reasonable jury that defendant butterflied the clam tongues.

■ Failure to meet literally even one claim limitation defeats a claim of literal infringement. I conclude that defendant has carried its burden of showing no genuine dispute regarding the fact that defendant does not perform the butterflying step as part of its processing of clams. For these reasons, summary judgment on plaintiff's claim of literal infringement will be allowed.

### C. Doctrine of Equivalents

■ Plaintiff also argues that summary judgment should not be granted because a question of fact remains as to whether defendant's process is substantially equivalent to plaintiff's patented method. On a motion for summary judgment, the non-movant bears the burden of showing equivalency. *Intellicall,* 952 F.2d at 1389.

■ To establish infringement under the doctrine of equivalents, overall equivalency is not sufficient—a patent holder must show that every limitation is met by a substantial equivalent. *Warner–Jenkinson Co.,* —— U.S. at ——, 117 S.Ct. at 1049 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."). In this case, proper application of the doctrine of equivalents requires that I examine the defendant's process, under which the clam tongue is trimmed rather than butterflied, in light of plaintiff's patented process, to determine "whether [the] substitute element[ ] matches the function, way and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.* at ——, 117 S.Ct. at 1054.

■ The '091 specification contains little in the way of an express explanation of the role of butterflying in the patented process. The purpose of plaintiff's proposed process, as stated in the specification, was to produce a larger one-piece food product from the clam tongue, a result that had been unobtainable under the prior art. The main obstacle to producing a larger one-piece clam "cutlet," according to the specification, was the toughness of the clam tongue. Under plaintiff's patent, "[t]he naturally hard and tough tongue is rendered chewable and tender after cooking by the butterflying and tenderizing steps." In contrast to the prior art, under which the clam tongue had to be chopped or sliced in order to render the meat edible, plaintiff's process used a butterflying step. The butterflying step is superior, in the eyes of the '091 inventor, to the previous chopping and slicing steps, in that it reduces the toughness of the clam tongue while at the same time retaining the tongue's surface size. Although the step of passing the clam tongue through the mechanical tenderizer (over which plaintiff does not hold a patent) plays an equal, if not larger, role in reducing the toughness of the clam tongue, I conclude that the butterflying step is meant in the patent to play a role in reducing the tongue toughness and rendering the clam tongue more easily fit for cooking and consumption as a one-piece food product.

Defendant states that it trims the rough edge of the clam tongue to remove sand that collects in the belly cavity located at the base of the tongue. The videotape of defendant's

process shows that the rough edge of the clam tongue is rather jagged in appearance, and that after trimming the edge is much smoother. The evidence supports a finding that defendant's trimming step is performed to remove sand and to smooth out the rough edge.

I conclude that defendant's trimming is not substantially equivalent to the butterflying step that acts as a limitation to all of plaintiff's patent claims. Defendant's trimming removes sand from the base of the tongue and smoothes out the jagged edge. The cut is made perpendicular to the flat surface of the tongue, and the rough, sandy portion at the base is then discarded. Unlike the butterflying step, defendant's trimming does not produce a larger and flatter tongue "cutlet" consisting of two flaps connected at one edge, or even the thinner portion that results if the two flaps are separated. Again, I do not accept plaintiff's proposition that because the trimming process removes up to 40% of the clam tongue's weight (a proposition disputed by defendant), the trimming performs the same function as the "bisecting" used in plaintiff's butterflying step. Defendant's trimming performs a substantially different function (to remove sand and smooth an edge of the clam), in a substantially different way (by cutting along one edge, perpendicular to the flat surface) for a substantially different result (a mostly intact clam tongue that is not cleaved in half).

In this litigation, plaintiff has submitted affidavits in which he states that the butterflying step was designed to facilitate removal of sand from the cavity located at the base of the tongue, and to reduce the thickness of the tongue's base, which, he asserts, is often mangled if passed intact through a mechanical tenderizer. Plaintiff asserts that trimming and butterflying both perform the same function that results in a cleaner tongue of more even thickness that is better tenderized and cooked. Plaintiff's explanations, made in the course of this litigation, of the role played by the butterflying step, carry little, if any, weight in interpreting the meaning of the role as expressed in the patent and file history. *See Intellicall,* 952 F.2d at 1388 (citing *Lear Siegler, Inc. v. Aeroquip Corp.,* 733 F.2d 881, 889 (Fed.Cir.1984)). Even if I were to accept plaintiff's current explanations of the purpose of the butterflying step, I would still conclude that defendant's trimming step is not substantially equivalent, for the reasons stated in the immediately preceding paragraph.

Defendant shucks, cleans, eviscerates, trims and passes clam tongues through a mechanical tenderizer, resulting in a tenderized, one-piece clam tongue "cutlet." Plaintiff asserts that this process is equivalent to the '091 patent. This argument, however, is in conflict with the recent Supreme Court reiteration that the doctrine of equivalents must be applied to *every element* of a patent claim. Because defendant's trimming is not equivalent to the butterflying step, there is no infringement, literal or by a substantial equivalent.

## V. Inducement to Infringe

Plaintiff argues that defendant, by preparing tenderized clam tongues and then, in advertising them for sale, using marketing materials showing butterflied clam tongues, induces customers to infringe plaintiff's patent by actually butterflying the tenderized tongues. Claim 1 of the '091 patent includes "[t]he process of claim 1 wherein said tongue is tenderized and then subsequently butterflied." Plaintiff argues that defendant's process, combined with the customers' subsequent butterflying, literally infringes claim 1 of the '091 patent.

In a deposition, one of defendant's former employees stated that "at least some" of Galilean's customers butterflied the tenderized clam tongues purchased from Galilean. In the copies of defendant's advertisements submitted to the court, the clam tongues are pictured cooked and butterflied (a fact asserted by plaintiff and not denied by defendant), and prepared in different ways. Defendant admits that it purchased the artwork for the advertisements from Bluegold, with which plaintiff had a licensing agreement. Plaintiff contends that defendant's use of the advertising materials purchased from Bluegold and its presentation of cooked butterflied clam tongues at the trade show constitutes sufficient evidence of defendant's intent to induce infringement.

**106**

Under the patent statute, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To prevail on a claim of inducement to infringe, a patent holder must show "proof of actual intent to cause the acts which constitute the infringement," *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990), and "the existence of direct infringement." *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed.Cir.1993).

Accepting the argument that a customer's subsequent butterflying of tenderized clam tongues purchased from Galilean would be sufficient to show the existence of direct infringement, I conclude, nonetheless, that defendant has satisfied its burden of showing no genuine dispute of material fact with regard to the inducement claim. Defendant's advertisements, even though they might picture cooked and prepared butterflied clam tongues, do not mention butterflying. The advertisements suggest various ways to prepare what the copy calls "clam fillets," none of which includes butterflying. I conclude that this is not the type of evidence upon which a reasonable jury could find proof of active inducement of direct infringement.

### VI. Claim Under Mass. Gen. Laws ch. 93A

Plaintiff has not filed a submission regarding defendant's oral motion that summary judgment be granted on plaintiff's only remaining claim: that the practices of defendant were unfair and deceptive within the meaning of Mass. Gen. Laws ch. 93A. In Count IV of his amended complaint, plaintiff stated that defendant violated chapter 93A, based on the same factual allegations made in support of plaintiff's infringement claims. Defendant argues that, if this court grants summary judgment as to plaintiff's remaining patent claims, it should dismiss the 93A claim, which is dependent upon the success of the infringement claims. Without the benefit of a submission by plaintiff, I conclude that plaintiff's claim under Mass. Gen. Laws ch. 93A should be dismissed, with prejudice, to the extent that the claim rests upon plaintiff's claims under the patent statute. To the extent that plaintiff is making any other assertions under chapter 93A, the claim is dismissed without prejudice.

### Order

For the foregoing reasons, it is ORDERED:

(1) Defendant's Motion for Summary Judgment (Docket No. 49) is ALLOWED.

(2) Plaintiff's Motion for Leave to File Plaintiff's Memorandum in Opposition to Defendant's Second Motion for Summary Judgment (Docket No. 52) is DISMISSED as moot.

(3) The Clerk is directed to enter forthwith on a separate document a Final Judgment as Follows:

For the reasons stated in the Opinion of August 11, 1997, it is ORDERED:

(1) Judgment for defendant on all claims of patent infringement.

(2) Judgment for defendant on plaintiff's claim under Mass. Gen. Laws ch. 93A to the extent that it rests upon a claim of patent infringement.

(3) In other respects plaintiff's claim under Mass. Gen. Laws ch. 93A is dismissed without prejudice.

(4) Costs are awarded to defendant.