**Application of Cesare RENI.**
**Patent Appeal No. 8234.**

United States Court of Customs and Patent Appeals.

Jan. 15, 1970.

1. Serial No. 217,266 filed Aug. 16, 1962, for "Method of Preparing Phenol and Acetone From Cumene Hydroperoxide."

Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C., for appellant. Thomas J. Macpeak, Washington, D. C., of counsel.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, MATTHEWS, Judge, sitting by designation, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 1–4 of appellant's application[1] as unpatentable over Joris[2] in view of Shepard[3] under 35 U.S.C. § 103. In his brief, appellant has withdrawn the appeal as to claims 1–3, leaving claim 4 the only remaining claim on appeal.

2. U. S. Patent, 2,626,281, issued Jan. 20, 1953.

3. U. S. Patent 2,993,074, issued July 18, 1961.

## THE INVENTION

The invention can be no more succinctly stated than as in claim 4:

4. Method of producing phenol and acetone by acid decomposition of cumene hydroperoxide, comprising gradually and simultaneously adding (a) an aqueous hydrochloric acid at a concentration between 35% and 36% by weight, and (b) a solution of cumene hydroperoxide in cumene at a concentration of at least 70% by weight, to a homogeneous liquid reaction medium consisting essentially of the acid decomposition products of said solution, while adjusting the rate of addition of the aqueous hydrochloric acid to maintain the concentration of the acid in the reaction medium between 0.1% and 1.1% by weight during the whole decomposition process, and while maintaining the reaction medium at a temperature between 30° and 100°C.

Appellant asserts that while it is known to produce phenol and acetone by processes involving the acid decomposition of cumene hydroperoxide, many different acids being suggested for various reasons, he has found that by utilizing aqueous, concentrated hydrochloric acid and the process limitations specified, disadvantages of the prior art may be overcome and high yields of phenol and acetone may be obtained.

## THE REFERENCES

Joris is directed to a cumene hydroperoxide decomposition process wherein *sulfur dioxide*, a relatively weak acid, as a gas, or in aqueous solution, and a solution of cumene hydroperoxide in cumene are added, gradually and simultaneously, to a liquid reaction medium consisting of decomposition products from previous operations. The rate of addition is adjusted to maintain the temperature within the range 30° - 80°C. and the concentration of the acid between 5 and 1,000 parts per million. At the beginning of the specification, however, Joris has an incidental disclosure wherein he states that it is known that cumene hydroperoxide decomposes to phenol and acetone under the influence of strong acids, such as hydrochloric acid, the stronger the acid the more efficient the decomposition (i. e., the higher the yields of phenol and acetone). The obvious implication is that Joris's process is an improvement over what was known before.

Shepard teaches the method of decomposing cumene hydroperoxide by gradually adding a solution of the hydroperoxide in cumene to a homogeneous, substantially *anhydrous* reaction medium consisting of phenol and a small amount of strong acid. Hydrogen chloride is listed as one of the strong acids which may be used. Temperatures between 55° and 65°C. are disclosed, and Shepard maintains the acid concentration in the reaction medium between 0.001 and 1.0 percent.

## THE REJECTION

The examiner rejected the claims over Joris in view of Shepard, maintaining that in view of Joris's disclosure that it was known to decompose cumene hydroperoxide with strong hydrochloric acid, "it would be obvious to one of ordinary skill in the art to employ the hydrogen chloride or concentrated acid of Shepard rather than sulfur dioxide in the Joris process." The examiner pointed out that low concentrations, which overlap those claimed, were disclosed in Shepard.

The board agreed with the examiner, taking the view, however, that Shepard was the more relevant of the two references. As the board expressed it:

Though the claims on appeal specify merely adding the acid and the peroxide simultaneously to the reaction medium which is composed of the reaction products while maintaining an acid concentration in the range of 0.1% to 1.1%, the working examples in this application actually start out by supplying a bath containing acid to which the peroxide and more acid is added. The similarity of that procedure to the Shepard process is apparent, the difference being that appellant adds more acid.

* * * Any slight amount of added acid would satisfy the terms of the claims.

In any event it strikes us that if the peroxide is added in such an amount as to diminish the acid concentration excessively, one of ordinary skill aware of the Joris procedure would have no difficulty in recommending the addition of more acid to the Shepard reaction mixture in a gradual manner.

In evaluating the differences between the subject matter sought to be patented and the prior art, the Patent Office made certain factual determinations. First, the use of concentrated hydrochloric acid was considered to be suggested by Shepard, who "clearly discloses the use of hydrogen chloride, per se, * * * and also the use of concentrated acid * *." This was in direct response to appellant's argument that "the prior art shies away from the use of concentrated hydrochloric acid * * *." With regard to the maintenance of low acid concentrations, the assertion was made by the examiner that this was accomplished by incremental addition of reactants to the reaction zone in essentially the same manner as done in the prior art. He further maintained that the art was fully cognizant of the reason for doing this, i. e. the danger of explosion caused by overheating, and took the position that the determination of optimum concentrations of acid would be "fully within the expected skill of the art."

## OPINION

On appeal, appellant emphasizes the unstable nature of the chemical reaction involved here, alleging that there is a strong danger of explosion. He argues that the board erred in failing to appreciate the criticality of the limitations in the claims calling for a homogeneous reaction medium and the maintenance of a specific concentration of acid, which limitations dispose of the problem of explosivity by preventing heat build-up within the reaction vessel. In addition, appellant points out that his process also eliminates corrosion problems and, by calling for the utilization of "off-the-shelf"[4] concentrated acid, produces substantial savings.

Appellant argues that the teachings of the references may not be properly combined to make the claimed invention obvious. While implicitly conceding that the Joris reference suggests that the use of hydrochloric acid[5] to catalyze the hydroperoxide decomposition is old, appellant takes the position that Joris can not teach more, since the patentee "indicates that the characteristics of sulfur dioxide in the decomposition reaction are substantially different."

With regard to the Shepard reference, appellant argues that the patentee teaches away from the use of concentrated hydrochloric acid in specifically requiring the exclusion of water from the reaction. In fact, appellant asserts that

[t]he entire history of the prior art has been that concentrated aqueous acids were undesirable for use in decomposing hydroperoxides.

The Solicitor, in defending the examiner's position takes a slightly different approach. Citing In re Aller, 220 F.2d

---

4. The parties acknowledge that the concentrated hydrochloric acid called for by the claim is the commercially available form of the acid.

5. It is acknowledged that, in his brief on appeal, appellant states:

The most that can be gained from the Joris disclosure is that sulfur dioxide is preferred by Joris over *concentrated* hydrochloric acid as a cumene hydroperoxide decomposition agent. [Emphasis added].

Joris, of course, does not specifically mention *concentrated* hydrochloric acid. The solicitor considers this a concession by appellant, but we have not felt it necessary to treat it as such.

454, 42 CCPA 824 (1955), he points out that:

> It is well settled that where patentability is predicated upon a change in a condition of a prior art process, as a change in concentration or the like, that change must at least be "critical" —i. e., it must lead to a new and unexpected result—"and the applicant has the burden of proving such criticality".

Arguing that the specification is equivocal on this point and that no comparative or other evidence has been proffered to show criticality, the solicitor maintains that "the appellant cannot rely for patentability on the maintenance of hydrochloric acid concentration within the claimed range."

■ We have considered appellant's arguments carefully. However, we consider the approach taken by the Patent Office to have been a rational one and, looking at the record as a whole, find no reversible error. Based on the factual determinations made by the examiner in considering the state of the prior art, a prima facie case was made out that the claimed invention was obvious. It became, therefore, incumbent upon the appellant to come forward with some sort of evidence indicating that the distinguishing limitations which he places on the claimed process are, indeed, "critical", i. e., that they lead to a new result which would not be expected by those of ordinary skill in the art. Appellant failed in carrying out this burden. Although he *alleged* that there were long-standing difficulties with the use of concentrated aqueous solutions of hydrochloric acid as a catalyst for the subject decomposition process, the assertion that one of ordinary skill in the art would not expect concentrated hydrochloric acid to work well, or would be led away from its use, which we feel was essential to appellant's case, was never satisfactorily proved to be true. The decision of the board of appeals is affirmed.

Affirmed.