**FOR YOUR EASE ONLY, INC., an Illinois Corporation, Plaintiff,**

v.

**NATURAL SCIENCE INDUSTRIES, LTD., a New York Corporation, Defendant.**

**No. Civ.A.02 C 1584.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 1, 2002.

Donald B. Levine, Saskia Nora Bryan, Levin & Ginsburg, Ltd., Chicago, IL, Daniel W. McDonald, Matthew A. Doscotch, Thomas R. Johnson, Merchant & Gould P.C., Minneapolis, MN, for plaintiff.

Jonathan Pieter VanEs, Timothy C. Meece, Banner & Witcoff, Ltd., Chicago, IL, Michael A. Cornman, Jay A. Bondell, Schweitzer, Cornman & Gross, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

GUZMAN, District Judge.

Defendant, Natural Sciences Industries, Ltd., ("NSI"), has filed written objections to Magistrate Judge Levin's Report and Recommendation ("R & R") entered on June 12, 2002. In his R & R Magistrate Judge Levin considered a motion for preliminary injunction filed by the Plaintiff, For Your Ease Only, Inc., ("FYEO"), against Natural Science Industries, Inc., ("NSI") seeking equitable relief from an alleged infringement of its '211 patent. He recommended that this Court grant the injunction. For the reasons set forth below, this Court declines to adopt the R & R.

## I. BACKGROUND [1]

This matter arises out of NSI's alleged infringement of FYEO's U.S. Patent No. 6,325,211. The '211 patent covers a series of products in FYEO's Fill–A–Bowl® line. The Fill–A–Bowl® is a transparent decorative bowl consisting of a smaller inner bowl within a larger outer bowl with a hollow perimeter region between the two bowls. The hollow perimeter is divided into sections by a series of dividers. Because the bottom of the bowl is easily removable, the hollow region can be filled with decorative items (even perishable items, such as candy, dried flowers, freeze-

---

1. NSI objects to many of the factual findings in the magistrate judge's R & R, but the following facts are undisputed.

dried vegetables, etc.), allowing the user to change the appearance of the bowl for different occasions.

Lori Greiner, President of FYEO, began selling her decorative bowls in early 2000 and applied for a patent on June 2, 2000. As a result, Ms. Greiner was issued a patent that is currently being re-examined and is not at issue in this case, U.S. Patent No. 6,253,918. The first patent did, however, allow Ms. Greiner to file a continuation application on January, 9, 2001, which resulted in the issuance of the '211 patent before this Court. Ms. Greiner later assigned the '211 patent to FYEO.

The Fill–A–Bowl® has enjoyed great success on QVC, reaching "key item" status and over 300,000 sales. In addition, Ms. Greiner has sold her line of products in retail stores, A.C. Moore & Crafts, in particular. Although the Fill–A–Bowl tested well at A.C. Moore, FYEO lost the contract to NSI and its less expensive BeautiFills Product line in April 2002. The BeautiFills line is very similar to the Fill–A–Bowl® Product line.

**Prosecution History**

NSI argues that it has raised a substantial question that the '211 patent is invalid because Ms. Greiner intentionally misled the Patent Office while prosecuting the patent. Specifically, NSI claims that Ms. Greiner withheld information regarding the prior art. It charges that Greiner did not properly disclose the Joly Marion bowl to the Patent Office. NSI further alleges that Greiner amended her patent claims in response to the patent Examiner's concerns, but the amended claims, while distinguishing the claimed Fill–A–Bowl structure from the prior art in the possession of the Examiner, did not in any way distinguish the Fill–A–Bowl from the Joly Marion bowl which Greiner had not fully disclosed. Thus, NSI reasons that because Ms. Greiner had the Joly Marion bowl in her possession while she was amending her patent claims to differentiate her invention from the prior art in the Examiner's possession but not differentiating it from the Joly Marion bowl, her failure to disclose the bowl must have been intentional. Mem. Opp. to Pl.'s Mot. Prelim. Inj. At 4–5.

### DISCUSSION

When a motion for preliminary injunction is the subject of an R & R, the district court is required to conduct a *de novo* review of those portions of the magistrate judge's R & R to which specific written objections have been filed. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b). Nevertheless, *de novo* review does not require a *de novo* hearing; the district court is not required to conduct another hearing to review the magistrate judge's findings and credibility determinations. *See United States v. Raddatz*, 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir.1995); *United States v. Severson*, 49 F.3d 268, 273 (7th Cir.1995). Rather, the district court has discretion to "accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (2002). If the district court is satisfied with the magistrate judge's findings and recommendations, it may in its discretion treat those findings and recommendations as its own. *Raddatz*, 447 U.S. at 675, 100 S.Ct. 2406.

**Standard for Preliminary Injunction**

The law of the Federal Circuit Court of Appeals governs the issuance of preliminary injunctions for patent infringement under 35 U.S.C. § 283. *See Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 n. 12 (Fed.Cir.1988). Under the law of the Federal Circuit, the decision to grant a preliminary injunction is within

the sound discretion of the district court. *See Amazon.com, Inc., v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir. 2001). The moving party has the burden of showing four factors: "(1) a reasonable likelihood of success on the merits, (2) irreparable harm if an injunction is not granted, (3) a balance of hardships tipping in its favor, and (4) the injunction's favorable impact on the public interest." *Id.* No single factor is a sufficient condition for an injunction, but the first two factors–a reasonable likelihood of success and irreparable harm–are necessary conditions. *See id.*

### FYEO's Likelihood of Success on the Merits

Of the four preliminary injunction factors, NSI objects only to the magistrate judge's finding that FYEO has a reasonable likelihood of success on the merits. (*See* Def.'s Objections at 1.) In order to succeed on the merits at trial, FYEO will have to prove that NSI infringed upon the '211 patent, *and* the patent must withstand NSI's challenges to its validity. *See Amazon.com, Inc.*, 239 F.3d at 1350. Therefore, for the purposes of this motion, if NSI raises a substantial question regarding infringement or validity of the '211 patent–that is, if it raises a defense that FYEO cannot prove "lacks substantial merit"–then the preliminary injunction should not issue. *Amazon.com, Inc.*, 239 F.3d at 1350–51 (quoting *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed.Cir.1997)).

NSI does not object to the magistrate judge's finding that its BeautiFills line likely infringes upon the '211 patent. (*See* Def.'s Objections at 1.) Rather, NSI objects to the finding that its invalidity defense lacks substantial merit. NSI raises two main invalidity challenges: the first alleges that the '211 patent is obvious, the second alleges that Ms. Greiner failed to disclose prior art and otherwise acted improperly before the PTO.

■ Although FYEO's '211 patent is presumed valid, NSI is entitled to raise an invalidity defense based on any of the conditions for patentability in Part II of Title 35. *See* 35 U.S.C. § 282 (2002). Here, NSI argues that the '211 patent is invalid because "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (2002). To resolve a question of obviousness, "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent area resolved." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The Court must also look at "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc." because "[a]s indicia of obviousness or nonobviousness, these inquiries may have relevancy." *Id.* at 18, 86 S.Ct. 684. Where, as in this case, the subject matter of the patent and the prior art are easily understandable, a determination of the level of ordinary skill in the art is unnecessary. *See Chore–Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed.Cir. 1983).

NSI's obviousness defense is two-part. First, it argues that the claims of the '211 patent are fully met by the Joly Marion bowl, except for the addition of a removable bottom plate, which, under the Manual of Patent Examining Procedure, Section 2144.04, is *prima facie* an obvious modification unless FYEO establishes the "criticality" of the removability limitation. Sec-

ond, even if the removability limitation is critical, NSI argues, the prior art shows motivation or suggestion to combine the Joly Marion bowl with other prior art references to include the removabilty limitation.

In support of its first argument, NSI cites the Manual of Patent Examining Procedure Section 2144.04, which allows an examiner to make an obviousness determination based only on "sufficiently similar" caselaw.[2] But, "[i]f the applicant has demonstrated the criticality of a specific limitation, it would not be appropriate to rely solely on case law as the rationale to support an obviousness rejection." *Id.* Section 2144.04 provides several examples of "common practices which the court has held normally require only ordinary skill in the art," one of which is "making separable." MPEP § 2144.04(V)(C). The case cited in subsection (V)(C) is *In re Dulberg,* 48 C.C.P.A. 992, 289 F.2d 522, 129 USPQ 348 (Cust. & Pat.App.1961). In *Dulberg,* the court considered a lipstick holder that was fully met by the Peterson patent except for a removable cap (which allowed access to the bottom end of the tube for easier removal and replacement of lip-

stick). *See id.,* 289 F.2d at 523. The court upheld the rejection of the patent, holding that "if it were considered desirable for any reason to obtain access to the end of Peterson's holder to which the cap is applied, it would be obvious to make the cap removable for that purpose."[3] *Id.*

On the one hand, the Fill–A–Bowl® products are distinguishable from the lipstick holder in *Dulberg.* A lipstick holder with a removable cap remains a mere lipstick holder. A Joly Marion bowl with a removable bottom plate remains a bowl, but it is also a craft project: it allows the user to engage in a creative activity. Therefore, while the removable cap in *Dulberg* is, in the language of MPEP Section 2144.04, a "routine expedient," the removable bottom plate of the Fill–A–Bowl is a critical limitation.[4]

Similarly, the claims of the '211 patent are distinguishable from the claims considered in *Dulberg,* which were directed only toward the structure of the proposed invention, not the method of removing the lipstick (which was to push the old lipstick out with "a pencil or similar instrument"). *Dulberg,* 289 F.2d at 523. In contrast, the '211 patent is directed "to a decorative

---

2. The MPEP is not binding on this Court, but it is entitled to judicial notice as long as it does not conflict with the statutes and regulations interpreted therein. *See Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1439 (Fed.Cir.1984).

3. The *Dulberg* court held that "[n]o specific prior art teaching would be necessary to show this operation." *Dulberg,* 289 F.2d at 523. Nevertheless, for good measure the court also combined Peterson and a patent structurally similar to Peterson (the Noble patent), which contained a removable cap. *Id.*

4. NSI insists that a limitation is only "critical" if it "leads to a new result which would not be expected by those of ordinary skill in the art." (Def.'s Objections) (quoting *In re Reni,* 57 C.C.P.A. 857, 419 F.2d 922, 925 (Cust. & Pat.App.1970)). This Court agrees

with FYEO that NSI's definition of "criticality" is limited to cases "where patentability is predicated upon a change in a condition of a prior art process, as a change in concentration or the like. . . ." *In re Reni,* 419 F.2d at 925; *see also In re Dillon,* 919 F.2d 688, 692–94 (Fed.Cir.1990) (denying patent, in part, because of the absence of unexpected results in the amount of fuel additive necessary to reduce particulate emissions). In contrast, a "critical limitation" is customarily understood as "one essential either to the operativeness of the invention or to the patentability of the claims." *Storchheim v. Daugherty,* 410 F.2d 1393, 1396, 56 C.C.P.A. 1147, 1150 (Cust. & Pat.App.1969); *see also* Black's Law Dictionary (7th ed.1999) (same definition). The removable bottom plate is essential to the operativeness of the Fill–A–Bowl® line and, if patentable, to its patentability.

container . . . and to a method for decorating a container." (*See* U.S. Patent No. 6,325,211 B1, Field of the Invention.) For example, Claims 1, 26 and 29 describe containers "for displaying items in an internal hollow region," and Claim 21 describes "a wand configured to assist with positioning items in the internal cavities." Unlike the claims in *Dulberg,* therefore, the claims of the '211 patent involve method, not only a simple structural change.

On the other hand, *Dulberg* does state that "if it were considered desirable for any reason to obtain access to the end of Peterson's holder to which the cap is applied, it would be obvious to make the cap removable for that purpose." And, although FYEO correctly argues that *Dulberg* does not "espouse a general principle that removability cannot make an invention," it does at least bring into question the nonobviousness of the '211 patent.

Nevertheless, because the removability limitation is critical to the '211 patent, it would not be appropriate, under MPEP 2144.04, to rely solely on *Dulberg* for an obviousness rejection. Therefore, *Dulberg* alone does not raise a *substantial* question regarding the validity of the '211 patent. The prior art, however, does raise a substantial question.

NSI argues that the following patents could be combined with the Joly Marion bowl to render the Fill–A–Bowl obvious:

1. "The Yellin Bowl": The bowl is intended for users to decorate by filling cavities between an inner and outer bowl with sand. The bowl is distinguishable from the Fill–A–Bowl because the decorative cavity is left open at the top to allow access to the cavity for decoration. *See* U.S. Patent No. 3992811. (issued Nov. 23, 1976). However, NSI contends that the Yellin bowl provides motivation to include access to the inner cavities of the Joly Marion bowl because it teaches the person of ordinary skill in the art the advantage of a changeable appearance in a decorative bowl with inner and outer cavities. From that lesson, NSI argues it is a short–and obvious–trip to the removable bottom plate of the Fill–A–Bowl.

2. "The Kimura Mug": The mug is decorative and has one fillable cavity. The material in the decorative cavity can be changed. "It is an object of the present invention to provide a vessel which makes possible the easy and free exchange of decoration." *See* U.S. Patent No. 5553735 (issued Sept. 10, 1996); Exhibit 3 of the Declaration of Jay Bondell. The inner cavity can be filled with two dimensional objects like pictures, or "Three-dimensional objects such as dried flowers, small stones, pieces of metal, glass, ceramics, plastic, wood, leaves and so on." Similar to the bottom plate of the Fill–A–Bowl, the Kimura mug uses a threaded bottom closure.

3. "The Kadjevich Mug": The mug is decorative and fillable. It features an inner container and an outer container. The user can remove the inner container, place photographs or other decorative material on a cardboard placard that fits into the cavity, and then seal the mug by a twisting action that attaches a stud on the inner container to a receptacle on the bottom of the outer container. The decoration placed in the cavity can be changed. *See* U.S. Patent No. 5040317 (issued Aug. 20, 1991); Exhibit 1 of the Declaration of Jay Bondell.

4. "The Yeh Mug": The mug also contains a removable inner container that allows the user to decorate the cavity between the inner and outer

containers. Unlike the Kimura and Kadjevich mugs, the Yeh mug is non-plastic, but the decorative interior cannot be changed. *See* U.S. Patent No. 5894948 (issued Apr. 20, 1999); Exhibit 2 of the Declaration of Jay Bondell.

Contrary to the magistrate judge's R & R, the prior art cited by NSI is in the same field as the Fill–A–Bowl line: decorative, changeable containers. Because the prior art references are sufficiently related to one another and to a related and common art, two questions determine whether it is appropriate to combine them to support an obviousness rejection: (1) "whether a combination of the teachings of all or any of the references would have suggested (expressly or by implication) the possibility of achieving further improvement by combining such teachings along the line of the invention in suit," and (2) "whether the claimed invention achieved more than a combination which any or all of the prior art references suggested, expressly or by reasonable implication." *In re Sernaker*, 702 F.2d 989, 994 (Fed.Cir. 1983).

The Fill–A–Bowl is essentially a combination of different elements of the prior art. The Fill–A–Bowl patent's first claim is a "decorative container for displaying items in internal cavities." The Joly Marion bowl and all four patents cited above accomplish the same goal. The Joly Marion bowl is nearly identical structurally to the Fill–A–Bowl as embodied in the '211 patent. The only exception is the inability to change the content of the Joly Marion bowl's internal cavities, which is accomplished in the Fill–A–Bowl by the removable bottom plate. However, the prior art provides motivation for such improvement; the Yellin bowl demonstrates the advantages of a decorative bowl with fillable internal cavities that can be changed. Thus, the only claimed innovation over the

prior art of decorative bowls with changeable, internal cavities is the Fill–A–Bowl's particular method of accessing the internal cavities. Rather than an open cavity at the top, as in the Yellin bowl, the Fill–A–Bowl patent claims openings at the bottom that are closed with a plate.

NSI has raised a valid question of whether the particular innovation of the Fill–A–Bowl patent, a removable bottom plate allowing access to the internal cavities, is non-obvious. Both the Kimura and the Kadjevich mugs feature internal cavities that are closed by fixtures at the bottom of the mugs. The Kimura mug even contains a "closure piece" similar to that on the Fill–A–Bowl. The benefits of decorative, fillable vessels, and the benefits of sealing the interior of such vessels at the bottom place in question the non-obviousness of the combination of these features embodied in the Fill–A–Bowl patent.

■ FYEO cites *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed.Cir. 2001), which warns against a hindsight analysis when determining the obviousness of a patent where the prior art is relatively simple. *McGinley* is of no avail to the plaintiff because the issue in that case is readily distinguishable from the issue here presented. *McGinley* involved a patent for a baseball with specific "finger placement indicia" designed to teach students how to throw different pitches. The patented baseball was very similar to another baseball patented 30 years earlier. *Id.* at 1343. However, the question presented in the *McGinley* case is far different than that presented here. In *McGinley,* the Court reviewed the trial court's granting a judgment as of matter law after the jury had returned its verdict. The jury had decided that the patent was non-obvious, and the judge set the verdict aside. Thus, the question was whether no reasonable jury could have decided that the patent was obvious. The Federal Circuit ruled

that though the similarities between the prior art and the patent were "striking," it could not say that no reasonable jury could find the innovation to be non-obvious. *Id.* at 1345. It was within this context that the *McGinley* Court offered its hindsight analysis warning. The situation in this case is easily distinguishable because the question is not whether no reasonable jury could decide that the '211 Fill–A–Bowl patent is non-obvious, but whether a jury is likely to decide that the '211 patent is non-obvious. For the reasons outlined above, the Court finds that the arguments against the '211 patent's non-obviousness are strong enough to seriously question the jury's likelihood of deciding that the patent is non-obvious.

The plaintiff argues that objective factors of nonobviousness, primarily the commercial success of its patent and NSI's imitation of its patent are indicative of the patent's non-obviousness. However, these secondary indicators of obviousness "cannot overcome the strong evidence of obviousness." *Brown & Williamson Tobacco Co. v. Philip Morris Inc.,* 229 F.3d 1120, 1131 (Fed.Cir.2000). Although the Fill–A–Bowl has enjoyed considerable market success, and there is strong evidence that NSI willfully imitated the bowl, the ultimate determination of obviousness is based on a totality of the evidence. *Id.* at 1131. Furthermore, of the secondary indicators listed in *Graham,* FYEO has cited only the market success of the Fill–A–Bowl, and has presented no evidence of "long felt but unsolved needs," or the "failure of others." In this case, the objections to the patent's nonobviousness based on the prior art are potentially strong enough to outbalance the secondary consideration of the Fill–A–Bowl's market success.

■ Despite holding that NSI has presented a question about the validity of FYEO's patent sufficient to deny the motion for the preliminary injunction, the Court also addresses NSI's assertion that the '211 patent is invalid because of Ms. Greiner's prosecutorial misconduct. The Court finds NSI's allegation in this regard unlikely to succeed on the merits. For a patent to be invalidated due to inequitable conduct during prosecution, it must be on a showing of (1) material prior art, (2) knowledge chargeable to the patent applicant of the prior art and its materiality, and (3) the applicant's failure to disclose the prior art to the patent office with an intent to mislead. *Fox Industries Inc. v. Structural Preservation Systems, Inc.,* 922 F.2d 801 (Fed.Cir.1990). NSI has not presented sufficient evidence of an intent to mislead on the part of Ms. Greiner. In fact, Ms. Greiner disclosed a document describing the Joly Marion bowl titled, "Description of Previously Marketed Product on Sale Prior to Invention by the Applicant" to the Patent Office, and also disclosed a color brochure with a photograph of the Joly Marion Bowl from which it is clear that the Joly Marion bowl was very similar structurally to the claimed invention. Pl.'s Rep. Mem. In Sup. of Mot. for Prelim. Inj. at 10. Given the extent of Ms. Greiner's disclosure, it is unlikely that NSI's argument that her failure to disclose even more was with intent to deceive the Patent Examiner will succeed.

### CONCLUSION

Because NSI has raised a substantial question regarding the validity of FYEO's '211 patent, this Court declines to adopt the magistrate judge's R & R, and the motion for preliminary injunction is denied.

So Ordered.

### REPORT AND RECOMMENDATION

LEVIN, United States Magistrate Judge.

Before the Court is Plaintiff's Motion for Entry of a Preliminary Injunction in the

cause. For the reasons set forth below, it is recommended that Plaintiff's Motion for Entry of a Preliminary Injunction be granted.

## BACKGROUND FACTS

### I. For Your Ease Only, Inc.

For Your Ease Only, Inc. is an Illinois corporation founded in 1996 by Lori Greiner, President and her husband, Dan Greiner, Vice–President. Pl.'s Mem. at 4. Ms. Greiner markets innovative home products through For Your Ease Only, Inc. *Id.*

The principal product at issue in the cause is For Your Ease Only, Inc.'s FILL–A–BOWL® product.[1] Pl.'s Mem. at 4. The FILL–A–BOWL® product is a large decorative bowl made up of a smaller inner bowl and larger outer bowl with a hollow perimeter region between the two bowls. *Id.* at 5. The hollow perimeter region has several dividers that create cavities symmetrically around the perimeter of the bowl. *Id.* At the bottom of the bowl, there is a removable plate which provides access to each of the internal cavities. *Id.* Almost any non-perishable item, such as colored beads, candy, freeze-dried or other dried vegetables can be placed into the hollow cavities of the FILL–A–BOWL® so that the bowl's decorative appearance can be changed for different occasions. *Id.*

Ms. Greiner has sold over 300,000 FILL–A–BOWL® products on the QVC marketing channel and has marketed the FILL–A–BOWL® product through retail stores; namely, A.C. Moore & Crafts ("A.C.Moore"). Pl.'s Mem. at 1, 5.

Ms. Greiner was issued U.S. Patent No. 6,325,211 B1 (" '211 patent") on December 4, 2001 which is the patent in issue in this cause. *Id.*

### II. Natural Science Industries, LTD.

NSI is a developer, manufacturer, and marketer of an extensive line of hobby and craft items, and has been in business for more than thirty years. Hanwell Aff. ¶ 3.

In January, 2002, NSI introduced a bowl (Beautifills product line) similar to the FILL–A–BOWL® product at the Hobby Industry Association Convention and Trade Show in Anaheim, California. Pl.'s Mem. at 9. NSI's Beautifills products were featured on the cover of *CNA*, a magazine that was widely distributed at the trade show and to retailers across the country. *Id.* NSI's product display included not only a fillable bowl, but also a fillable vase, coaster holder, and serving tray. *Id.* at 10. All of these products are decorative containers which have inner and outer containers, a hollow perimeter region between a symmetrical vertical access with several dividers separating the hollow region into many inner cavities, and removable covers to enable access to the hollow region. *Id.* Ms. Greiner learned at the trade show that NSI intended to begin offering these products for sale in May 2002.[2] *Id.*

In a letter dated February 14, 2002, Ms. Greiner informed NSI of the '211 patent and her concern about NSI products. Pl.'s Mem. at 10. Ms. Greiner stated in the letter that, "We understand that those [NSI] products will not be offered for sale until May 2002." *Id.*

During the first week of April 2002, Ms. Greiner contacted A.C. Moore and learned that despite the success of the FILL–A–BOWL® products, A.C. Moore decided to

---

**1.** Ms. Greiner has also developed other products; namely, the FILL–A–JAR™, FILL–A–TRAY™, FILL–A–TRIVET™, and FILL–A–FRAME™.

**2.** NSI's President, Andrew Glanz acknowledged that NSI saw Ms. Greiner demonstrating her FILL–A–BOWL® product on the QVC channel during the summer of 2001. Pl.'s Mem. at 9.

buy NSI's less expensive fillable bowl. Pl.'s Mem. at 11. Furthermore, after learning that A.C. Moore was buying NSI products, Ms. Greiner's assistant went to A.C. Moore and discovered that NSI's fillable bowl product was on A.C. Moore's shelf. *Id.* The discovery of products on the shelf contradicted Ms. Greiner's understanding that NSI would not begin marketing the product until May 2002. *Id.*

### LEGAL STANDARD

The grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the sound discretion of the district court. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed.Cir.2001) (citation omitted). The moving party is entitled to a preliminary injunction if it can succeed in showing: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact to the public interest. *Id.* (citation omitted.) Although each of the factors is weighed and measured against each other, a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, i.e., likelihood of success on the merits and irreparable harm. *Id.* (citation omitted.) Irreparable harm is presumed when a clear showing of patent validity and infringement has been made. *Id.* (citation omitted.)

In order to demonstrate a likelihood of success on the merits, Ms. Greiner must show that it will likely prove that NSI infringed the '211 patent and that its infringement claim will likely withstand NSI challenges to the validity and enforceability of the '211 patent. *Amazon.com, Inc.,*

239 F.3d at 1350 (citation omitted). If NSI raises a substantial question concerning either infringement or validity, that is, it raises a claim that plaintiff cannot prove "lacks substantial merit," a preliminary injunction should not issue. *Id.*

### ANALYSIS [3]

### I. LIKELIHOOD OF SUCCESS ON THE MERITS

Ms. Greiner argues that NSI's fillable bowl product infringes independent Claims 1 and 26 of the '211 patent as well as at least a dozen of the dependent claims of the patent. Pl.'s Mem. at 13. In addition, NSI's fillable vase, tissue box, coaster holder and serving tray infringe independent Claim 1 and several of the dependent claims as well. *Id.*

NSI does not dispute (for purposes of this motion) that its fillable bowl likely infringes Plaintiff's '211 patent. Def.'s Mem. at 1; Pl.'s Reply at 1. NSI does contend that the claims of the '211 patent are invalid because Ms. Greiner failed to disclose prior art to the U.S. Patent and Trademark Office ("PTO"); namely, the existence of the "previously marketed bowl" and/or the Joly Marion bowl (hereinafter "prior art bowls") which had been on sale in the United States a year before the filing date of the '211 patent. Def.'s Mem. at 6–7. Moreover, NSI asserts that the prior art bowls, in combination with the art cited by the PTO examiner, would have caused the rejection of all claims of the '211 patent application as being obvious and unpatentable for failing to meet the "invention" requirement of 35 U.S.C. § 103. *Id.* Furthermore, NSI asserts that

---

**3.** The parties have agreed, and the Court concurs, that an evidentiary hearing is not required in resolving the instant motion for preliminary injunction. *See e.g., Ty, Inc. v. The Jones Group, Inc.,* 98 F.Supp.2d 988, 1002 (N.D.Ill.2001).

Also, the parties have provided the Court with the subject bowls of the parties at issue, plus the prior art bowl.

Ms. Greiner is precluded from preliminary injunctive relief because of her inequitable conduct before the PTO. *Id.* at 18.

The determination of whether a claim has been infringed requires a two-step analysis. *Carroll Touch v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993). First, the claim must be properly construed to determine its scope and meaning. *Id.* (citation omitted). Second, the claim as properly construed must be compared to the accused device or process. *Id.* Moreover, a claim covers an accused device if the device embodies every limitation of the claim, either literally or by an equivalent. *Id.*

The Court finds as a preliminary matter that Ms. Greiner will likely sustain her claim that the NSI fillable bowl infringes independent Claims 1 and 26 of the '211 patent. It is also likely that Ms. Greiner will prevail on her claim that NSI's fillable vase, tissue box, coaster holder and serving tray products infringe Claim 1 and several other dependent claims as well. Because NSI's fillable bowl contains each element of Claim 1, Ms. Greiner has met her burden of demonstrating infringement, given the fact that NSI's fillable bowl embodies every limitation of the Claim.[4]

The Court next finds NSI's argument that Ms. Greiner's failure to disclose prior art to the PTO invalidates the '211 patent unavailing. In Ms. Greiner's application to the PTO, she specifically disclosed the previously marketed bowl (i.e., bowl illustrated in the Ampersand store brochure) and the PTO allowed the claims of the '211 patent over that prior art. Lori Greiner Aff. ¶ 25, Ex. G, Description of Previously Marketed Product on Sale Prior to Invention By Applicant. NSI asserts, however, that Ms. Greiner failed to specifically disclose the Joly Marion prior art bowl. The Court, respectfully, finds NSI's argument unfounded. Upon review, the Court finds that NSI's suggestion that material, non-cumulative information about this bowl was not disclosed to the PTO is unsupported.[5]

NSI's assertion that the prior art bowls would have caused the rejection of the claims of the '211 patent as being obvious and unpatentable also must fall. NSI contends that the prior art bowls, taken as primary art, teach the invention as claimed (i.e., the FILL–A–BOWL® product) except for the removable feature which is supplied by the prior art cited by the PTO examiner. Def.'s Mem. at 8. The Court finds, however, that NSI cites no evidence supporting the assertion that the prior art includes any teaching, suggestion, or reason to combine the art it cites. *See e.g., McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed.Cir.2001) (citations omitted). The patents the PTO and NSI cited are directed to an ink bottle (Bissell), a children's snack food dispenser (Rossman), and a rotary picture frame (Grendahl). None of the patents, teaches, suggests, or gives a reason to combine its teachings with an item like the Joly Marion bowl. Similarly, nothing about the prior art decorative bowl, including Mr. Dimitri Joly's statements, teaches, suggests, or gives a reason to combine that bowl with any other relevant device. Furthermore, Ms. Greiner's invention is directed to a different market and purpose than these prior art devices.

---

4. Note also that, NSI, as stated, has not asserted herein a non-infringement of Ms. Greiner's '211 patent.

5. It perhaps also bears noting, that, as NSI itself states in its Response Memorandum, the "bowl that Ms. Greiner had before her, which she calls the 'previously marketed bowl,' is in all material aspects identical to the Joly Marion prior art bowl," anyway. Def.'s Mem. at 3. (*Cf.* Lori Greiner Aff., Exs. D & E; Joly Decl., Exs. 1, 4, 10 & 11).

Next, NSI asserts that "it is well-established that making a fixed element separable or removable is not invention, as removability is notoriously old and well-known throughout the mechanical arts." Def.'s Mem. at 9. NSI further cites to the Manual of Patent Examining Procedure ("MPEP") § 2144.04(V)(c) for the proposition that making a fixed element removable is not an invention. *Id.* Herein, the Court finds, respectfully, that NSI does not correctly characterize the law. A patent claim is obvious if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[6] 35 U.S.C. § 103. Ms. Greiner's structural change was not obvious and launched a new line of products that appealed to customers who have no interest in the Joly Marion bowls. For example, the FILL–A–BOWL® product is a reusable bowl that's decorative appearance can be changed for parties and any occasion. The Joly Marion bowl, on the other hand, is a decorative bowl in which items; such as dried flowers, seeds and the like, are arranged in attractive patterns that cannot be changed because the bowl is sealed. Put differently, the FILL–A–BOWL® has a capacity for custom made decorative fillings of the bowl. On the other hand, the prior art bowl has a set decorative filling, with no capacity for customized decorative fillings. Furthermore, the cases cited by NSI do not espouse a general principle that removability cannot make an invention.[7]

The Court, therefore, finds the above-referenced arguments and those additional arguments cited in NSI's memorandum relating to obviousness unavailing. The Court notes here that there is sufficient evidence to demonstrate that Ms. Greiner's FILL–A–BOWL® product is, in fact, not obvious. For example, objective evidence such as commercial success is probative to show that an invention is not obvious. *See e.g., Arkie Lures, Inc.,* 119 F.3d at 957. Even though NSI asserts that these objective, or secondary, considerations "cannot be used ... to offset a conclusion of invalidity based on analysis of the primary factual inquiries" (Def.'s Mem. at 8), the Federal Circuit has found directly to the contrary, holding that a failure to consider this objective evidence is legal error. The evidence may prove nonobviousness even where the "primary" considerations, in isolation, might support

6. Obviousness is assessed based upon four factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of obviousness. *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 662–63 (Fed. Cir.2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.,* 119 F.3d 953, 955 (Fed.Cir. 1997); *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

7. Inventions involving removable features are not necessarily considered as an exception to the statutory requirement. To the contrary, an invention need not be complex to be nonobvious. *Demaco Corp. v. Langsdorff Licensing Ltd.,* 851 F.2d 1387, 1390–91 (Fed.Cir. 1988). As seen, NSI cites to the Manual of Patent Examining Procedure ("MPEP") § 2144.04(v)(c) for the proposition that making a fixed element removable is not an invention. Def.'s Mem. at 9. This citation, however, is not entirely accurate, for the preface to the cited section states: "If the applicant has demonstrated the criticality of a specific limitation, it would not be appropriate to rely solely on case law as the rationale to support an obviousness rejection." MPEP § 2144.04.

That criticality is present here. Ms. Greiner did not merely make a minor structural change. The changes she made launched a whole line of products, that, as stated, appealed to customers who have no interest in the Joly Marion bowls. Ms. Greiner's bowls meet customers needs for do-it-yourself, visually appealing, simple, and reusable presentation for functional items like bowls useful for parties and any occasion.

an obviousness finding. *Ruiz*, 234 F.3d at 667. Clearly, For Your Ease Only, Inc.'s significant commercial success in generating over $5 million in revenue through the QVC channel demonstrates the nonobviousness of the FILL–A–BOWL® product.

The Court notes that there are other examples of nonobviousness in the cause. For example, NSI's own marketing focuses on the fillable feature of its fillable bowl; thereby, demonstrating the nonobviousness of the claims of the '211 patent. Greiner Aff. ¶ 65, Ex. O. *See e.g., Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579–80 (Fed.Cir.1997) (an infringer's recognition of the importance of the patentable feature supports a finding of nonobviousness). In addition, the declaration of Dimitri Joly, submitted by the defense, supports nonobviousness. Specifically, Mr. Joly claims to have developed the first sealed prior art products in 1990. Joly Decl. ¶ 2. Significantly, Mr. Joly, a person engaged in the development of decorative containers, never claims that the creation of bowls with removable covers was obvious to him. *Id.* ¶ 10. Furthermore, no one at Joly Marion claims that

there was any teaching or suggestion to combine removability features of other products with the Joly Marion seal bowl to make a bowl like the FILL–A–BOWL® product. *Id.*

The Court, therefore, finds that NSI has failed to raise a substantial question concerning the validity of the '211 patent and NSI's obviousness defense lacks substantial merit.[8]

In sum, the Court finds that the Plaintiff has a substantial likelihood of success on the merits.

## II. OTHER PRELIMINARY INJUNCTION FACTORS

As discussed, the Court finds that, as delineated *supra*, Ms. Greiner has demonstrated a strong case of infringement, patent validity, and enforceability. Moreover, NSI does not address or contest Plaintiff's showing that (1) Plaintiff will be irreparably harmed if a preliminary injunction is not issued; (2) the balance of harms weighs in Plaintiff's favor; and (3) the public interest favors an injunction.[9] Moreover, the Court finds that Plaintiff

---

8. The Court further finds NSI's assertion that preliminary injunctive relief is precluded due to Ms. Greiner's alleged inequitable conduct before the PTO unavailing. "Inequitable conduct requires that the patentee withheld material information from the patent examiner or submitted false material information with the intent to deceive or mislead the examiner into granting the patent." *Upjohn v. MOVA Pharm. Corp.*, 225 F.3d 1306, 1312 (Fed.Cir. 2000) (citation omitted.) Both materiality and intent to deceive must be proven by clear and convincing evidence. *Id.* (citation omitted.)

The Court finds that Ms. Greiner did not withhold material information with respect to the FILL–A–BOWL® product. Ms. Greiner distinguished the patents cited against her claims and specifically pointed out the significant differences between the claims sought and the prior art cited. Moreover, Ms. Greiner disclosed material information regarding

the FILL–A–BOWL® product to the PTO as evidenced by the document entitled, "Description of Previously Marketed Product on Sale Prior to Invention by Applicant." Lori Greiner Aff., Ex. G. Thus, Ms. Greiner disclosed the structural similarity and all material, non-cumulative information with respect to the prior art. Based on the record, the patent examiner considered the information Ms. Greiner properly submitted regarding the prior art. Therefore, the Court finds that there is no evidence to support a finding that Ms. Greiner withheld material information from the patent examiner with the intent to either deceive or mislead the examiner into granting the '211 patent.

9. It has been held that an infringer's failure to challenge the balance of hardships and public interest tips the balance in favor of the patentee. *See e.g., Lambton Mfg. Ltd. v. Young*, 833 F.Supp. 610, 616–617 (W.D.Ky.1993).

has established each of these preliminary injunction factors.[10]

## CONCLUSION [11]

In view of the foregoing, it is recommended that Plaintiff's Motion for Entry of a Preliminary Injunction be granted.

June 12, 2002.

10. Since Plaintiff has, as discussed, a substantial likelihood of success on the merits, and the balance of harms is in Plaintiff's favor, Plaintiff easily meet the Seventh Circuit's requisite sliding scale/balance of harms analysis for granting of a preliminary injunction. *See* *e.g., Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895–96 (7th Cir.2001).

11. The Court reviewed and considered all of the points raised by NSI, including some that were found impracticable and unnecessary to be addressed herein.